511 So.2d 1296 (1987)
HANOVER INSURANCE COMPANY, Appellee,
v.
HIGHLANDS INSURANCE COMPANY, Appellant.
No. 18910-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
Blanchard, Walker, O'Quin & Roberts by L. David Cromwell, Shreveport, for plaintiff-appellee.
Mayer, Smith, & Roberts by Ben Marshall, Jr., Shreveport, for defendant-appellant.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
An employer's liability insurer appealed a partial summary judgment decreeing it liable to an excess liability insurer for the costs of providing an employer with a defense to a tort action. We affirm for the reasons explained.
*1297 On September 16,1982, Highlands Insurance Company ("Highlands") issued a Standard Workmen's Compensation and Employer's Liability Policy to Williford Roofing and Sheet Metal, Inc. ("Williford"). In addition, Hanover Insurance Company ("Hanover") issued Williford a Commercial Catastrophe Liability Policy effective August 15, 1982.
On May 2, 1983, David Michael Broadway, a Williford employee, was injured during the course and scope of his employment when he came in contact with a high voltage powerline. Broadway filed suit against the City of Natchitoches alleging that certain acts of negligence caused his injury.
A third party demand was filed against Williford by the City of Natchitoches alleging certain intentional acts committed by a Williford employee caused Broadway's injuries. Highlands denied coverage on the basis of an exclusion in the insurance policy it had issued to Williford, and refused to provide a defense to the third party demand. Hanover provided a defense to Williford.
Hanover filed suit against Highland seeking recovery of the cost of providing Williford a defense. Hanover alleged that under the terms of the excess liability insurance policy it issued to Williford, Hanover became subrogated to all Williford's rights and was consequently entitled to recover the cost of providing the defense.
Hanover filed a motion for partial summary judgment, seeking a decree that Highlands breached its duty to provide a defense to Williford, and was liable to Hanover for the costs it incurred in defense of Williford. The trial judge granted the partial summary judgment, explaining in written reasons:
"Under the jurisprudence, and the language of the policy involved, and the Court considering the facts which are undisputed, Highlands clearly had an obligation to defend Williford in the Broadway lawsuit. Under Section II of insuring agreements, Paragraph A, Highland agreed to `... defend any proceeding against the insured alleging such injury and seeking damage on account thereof, even if such proceeding or suit is groundless, false or fraudulent ...'. Contrary to the argument made by Highlands, the language of the policy in Coverage B does not require that the lawsuit be brought on behalf of or by the employee who is injured, it merely states that Highlands will pay for any liability which Williford is obligated to pay because of an injury to any of its employees.
The arguments now made by Highlands with respect to the Motion for Summary Judgment are arguments that they should have made in defending Williford in the Broadway lawsuit".
Highlands appealed, alleging the trial court erred in granting Hanover's motion for partial summary judgment.
The sole issue on appeal is whether Highlands breached its duty to defend Williford against the third party demand filed by the City of Natchitoches.
The insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The insurer's duty to defend suits brought against its insured is determined, not by the insurer's interpretation of what liability may be covered by the policy, but by the allegations of the petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. The insurer is obligated to pay the insured's expenses in defending an action, where the pleadings allege coverage, even though in fact there is no coverage. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (La.1969); Little v. Kalo Laboratories, Inc., 424 So.2d 1065 (La.App. 2d Cir.1982).
The allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured. Thus, if, assuming all the allegations of the petition are true, there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the insured regardless of the outcome *1298 of the suit. American Home Assurance Company, supra; Little, supra.
Highlands contends that the exclusivity of the worker's compensation laws barred the City of Natchitoches from asserting a negligence claim against Williford, and that only Broadway possessed the right to assert Williford was guilty of an intentional act. Accordingly, Highlands argues that the claim brought by the City of Natchitoches was ill-founded as a matter of law, and since Williford could therefore not have become legally obligated to pay damages to the City of Natchitoches, coverage was not afforded and the duty to defend did not arise.
The policy issued to Williford provided:
"I. Coverage AWorkmen's Compensation: To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.
Coverage BEmployers' Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom,
(a) sustained in the United States of America, its territories or possessions, or Canada by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations or in operations necessary or incidental thereto ...".
The policy also provided:
"II. Defense, Settlement, Supplementary Payments: As respects the insurance afforded by the other terms of this policy the company shall:
(a) defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent
This particular insurance policy provides two separate coverages. Coverage A required Highlands to pay workers' compensation benefits required of Williford.[*] The policy issued to Williford by Highlands also provides that it would defend any proceeding against Williford alleging an injury sustained by one of its employees arising out of and in the course of his employment (Coverage B) "even if such proceeding or suit is groundless, false or fraudulent ...".
The third party demand against Williford filed by the City of Natchitoches alleged that Broadway was employed by Williford as a journeyman roofer and was engaged in repairing a roof for Williford when he was injured. The third party demand also alleged that Broadway's injuries were caused because Williford's foreman "intentionally required the members of his crew to continue work on the roof ... despite the dangerous proximity of the high voltage power line and despite the fact that he had full knowledge that the line was energized".
These allegations are sufficient to establish an obligation on the part of Highlands under its policy to defend the suit on behalf of Williford. Failure of the insurer to defend on these allegations renders it liable for costs incurred by Hanover in defending the suit against Williford.
Highlands also contends that its policy provided no coverage against the claim made by the City of Natchitoches because of the following exclusionary clause found therein:
"This policy does not apply:
(f) under Coverage B, to any obligation for which the insured or any carrier as his insurer may be held liable under the workmen's compensation or occupational disease law of a state designated in Item 3 of the declarations, any other workmen's compensation or occupational disease law, any unemployment compensation or disability benefits law, or under any similar law".
Harris v. Olympus Terminals and Transport Company, Inc., 516 F.2d 922 (5th *1299 Cir.1975) involved the interpretation of an almost identical coverage provision and an identical exclusionary clause. In Harris a shore-based barge-cleaner employee sued his employer and its insurance company to recover damages for personal injuries arising out of an accident that occurred when the employee fell into the cargo compartment of a barge which his employer was cleaning. The employee claimed that he fell because of the unseaworthiness of the barge.
The district court granted the insurance company's motion for summary judgment as to claims other than those for worker's compensation made by the employee against the insurance company directly, holding: "... even if plaintiff can maintain an action against his employer ... as owner pro hac vice of the barge, the insurance contract in the record excludes direct recovery by plaintiff against his employer's insurer... as per coverage B and exclusion... (f)".
In reversing the judgment of the district court, the appellate court stated:
"Two other judges of the same district court have construed Exclusion (f) differently from its construction in this case. In Brickley v. Offshore Shipyard, Inc., 270 F.Supp. 985,989 (E.D.La.1967), Judge Heebe wrote: `We find no reasonable basis to hold that the words of Exclusion F are intended to remove from coverage a claim for damages by an injured employee merely because that employee might also have a claim for compensation.' In Voisin v. Ocean Protein, Inc., 321 F.Supp. 173,176 (E.D.La.1970), Judge Cassibry commented on and followed the holding in the Brickley case. Likewise, the Ninth Circuit reached the same conclusion. Standard Dry Klin Co. v. Bituminous Fire & Mar. Ins. Co., 9th Cir. 1973, 479 F.2d 427, 431.
In Parfait v. Jahncke Service, Inc., 5th Cir.1973, 484 F.2d 296, 308, Judge Thornberry wrote for this circuit: `If an exclusion is to take away what the insuring language provides, it must do so in unmistakably clear terms.' In our opinion, Exclusion (f) does not meet that test.
In Garcia v. Queen, Ltd., 5 Cir.1973, 487 F.2d 625, 629, this Circuit held that a like Part B of an insurance policy provided coverage for damages sought under maritime theories of recovery. That holding demonstrates the propriety of concession that Clause B in this case should be construed to provide coverage were it not for Exclusion (f). We hold that Exclusion (f) simply does not apply".
Using the same rationale, we find no reasonable basis to hold that Exclusion (f) removes from coverage a claim alleging intentional tortious acts by Williford's foreman caused Broadway's injuries merely because Broadway received workers' compensation benefits. The exclusion does not remove this situation from coverage in "unmistakably clear terms".
Condition "K", entitled "Subrogation", of the insurance policy issued to Williford by Hanover, provided:
"The company shall be subrogated to the extent of any payment hereunder to all the insured's rights of recovery therefor".
Maryland Casualty Company v. Marquette Casualty Company, 143 So.2d 249 (La.App.4th Cir.1962) involved the effect of an almost identical subrogation clause in an excess liability insurance policy. There, Gulf Engineering Company, Inc., the insured, was sued for damages resulting from an automobile accident involving one of its employees. Marquette Casualty Company, the primary insurer, refused to defend the action. Maryland Casualty Company, the excess liability insurer, retained counsel in defense of the suit.
In holding Marquette liable to Maryland for the costs it expended in defending Gulf in the suit, the Court Circuit stated:
"When Gulf Engineering Company, Inc. was sued, it had the right to look to Marquette Casualty Company to defend the suit in its behalf, as said insurer was primarily liable. Marquette summarily refused to defend and Gulf sought protection from Maryland. Although only an excess liability carrier above $5,000, Maryland was forced to defend the action in which a judgment for more than *1300 $400,000 was being sought or otherwise stand the chance of exposure to substantial liability. In view of this, Maryland could not abandon Gulf merely because Marquette saw fit not to defend the action on Gulf's behalf, and certainly Marquette can not escape liability because of its refusal to defend, for, under the law, it cannot profit by its own breach of its contract with Gulf.
By having failed to honor its contractual duty of defending the lawsuit on behalf of Gulf, Marquette became indebted to Gulf for the cost of the defense, and Gulf's claim against Marquette passed to Maryland under the subrogation clauses of that insurer's policy ...".
See also Smith v. Insurance Company of the State of Pennsylvania, 161 So.2d 903 (La.App. 1st Cir.1964).
Finding that the trial court correctly granted Hanover a partial summary judgment against Highlands, we affirm the district court's judgment, at appellant's cost.
NOTES
[*] We note that Highlands paid Broadway workers' compensation benefits.