CIACCIO, Judge.
This appeal involves an insurance coverage dispute. The issue presented is the applicability of a watercraft exclusion/endorsement-in defendant’s commercial general liability insurance policy. Following a bench trial, the court determined that the exclusion did not apply to the facts of the present case, and therefore the subject policy provided coverage for plaintiffs accident. The trial court also ordered defendant to reimburse its insured for legal costs in defending plaintiffs allegations and pursuing a third party demand against the insurer. For the reasons stated herein, we affirm in part and reverse in part.

*349
FACTS AND PROCEDURAL HISTORY

Plaintiff, Charles Singleton, was employed by United Tugs, Inc. as a seaman and was assigned as a deckhand to United Tugs’ vessel, the MTV EMMETT EYMARD. In March of 1994, United Tugs entered into an oral charter agreement of the M/V EMMETT EYMARD and its crew to Anthony Bertucci Construction Company in furtherance of Bertueei’s construction of a rock jetty near Fresh Water Bayou, Louisiana.
On March 4, 1994, plaintiff and another United Tugs employee, Capt. Ben Conner, departed from the M/V EMMETT EY-MARD to assist a Bertucci employee, Mike Thomas, in a survey operation on the rock jetty. The rock jetty consisted of rocks approximately two feet in diameter which had been packed down to form a levee six feet high. The surveying operation entailed |2taking measurements with special equipment along various points of the levee. The workers were using an eighteen foot Bertucci skiff to move the survey equipment after each series of measurements.
During the course of the survey operation, Singleton slipped and fell on a rock and sustained injuries. Plaintiff was transported immediately to Abbeville General Hospital where he was treated in the emergency room and released. Plaintiff subsequently underwent cervical and lumbar surgery. Singleton received maintenance and cure from his employer, United Tugs, from the date of the accident.
On July 29, 1994, plaintiff filed the present lawsuit against United Tugs, Anthony Ber-tucci and Sphere Drake Insurance Company as defendants’ marine insurer.[1] In this petition, plaintiff sought damages as well as continued maintenance and cure, alleging that the United Tugs was negligent in assigning him to work on the rock jetty. Plaintiff further alleged that the M/V EMMETT EY-MARD was unseaworthy in that the crew was inadequate for the tasks required. Plaintiff alleged that Bertucci was liable in solido with United Tugs based on Bertucci’s charter agreement involving United Tugs’ vessel.
Plaintiff subsequently amended his petition to assert a claim against Bertucci for negligently supplying wading boots to him for the survey operation which were too large, thereby causing him to fall.
Both Bertucci and United Tugs denied the allegations of plaintiffs petition and filed cross-claims against each other. Sphere Drake denied coverage to Bertucci based on an exclusion in its policy. Bertucci tendered thejjjcase to Travelers Indemnity Company of Illinois which insured Bertucci under a standard commercial general liability policy. Based on the allegations of plaintiffs petition, Travelers initially denied coverage to Bertucci with a reservation of rights. However, after an investigation, on November 7, 1995, Travelers assumed the legal defense of Bertucci. Travelers subsequently learned that plaintiff had testified in his deposition that he fell while attempting to board the skiff after the survey operations. In July of 1996, Travelers withdrew from their representation of Bertucci, citing an endorsement in their policy which excluded coverage for accidents arising during boarding of a vessel.
On August 14,1996, Bertucci filed a cross-claim against Sphere Drake on the basis of a protection and indemnity policy issued to Bertucci seeking insurance coverage and indemnity as a result of plaintiffs claims. Ber-tucci also filed a third party demand naming as defendants Travelers Indemnity Company and several other insurers, alleging that these insurers had issued policies of insurance to Bertucci which covered plaintiffs claims. Bertucci alleged in this third party demand that Travelers had the duty to defend and indemnify Bertucci against the claims asserted by plaintiff in his lawsuit based on the provisions of a commercial general liability policy issued by Travelers to Bertucci. Bertucci further alleged that the additional named “bumbershoot underwriters” were liable in the event that no insurance coverage was available based on the cited policies.
The bumbershoot underwriters responded with an answer and a cross claim against *350 Sphere Drake and Travelers and a counterclaim against Bertucci.
On November 5, 1996, Sphere Drake moved to dismiss Bertucci’s cross claim on the basis of an arbitration clause in that policy requiring that disputes ^between Ber-tucci and Sphere Drake be arbitrated in London. The trial court denied this motion, and Sphere Drake thereafter removed the entire case to federal court. On November 11, 1996, the parties participated in a settlement conference and on November 20, 1996, United Tugs and Bertucci agreed to settle Singleton’s personal injury claims, with Singleton executing an agreement not to enforce the judgment until Bertucci’s claims against Travelers and the other insurers were resolved. The settlement amount was for $326,000.00, with United Tugs and Bertucci each agreeing to bear 60% of the cost. Ber-tucci also agreed to reimburse United Tugs for 50% of the maintenance and cure paid to plaintiff. At the same time as the execution of the settlement agreement, Bertucci dismissed its claims against Sphere Drake, and the matter was remanded to state court.
This matter proceeded to trial on Bertuc-ci’s third party demand against Travelers on November 25,1996. Travelers filed a motion to continue prior to trial which was denied by the trial court. Following a one day trial, the trial court rendered judgment finding that the Travelers policy provided coverage for plaintiffs accident. The trial court found that the accident occurred while plaintiff was walking on the rock jetty, and that the watercraft exclusion contained in the Travelers policy was not applicable to this accident. The settlement agreement was introduced into evidence, and the trial court found the agreement was reasonable. The trial court rendered judgment against Travelers for one-half of the settlement with the plaintiff, as well as one-half of the medical payments and maintenance and cure paid to plaintiff as per the terms of the settlement agreement. The trial court also found Travelers liable for Bertueci’s legal costs in defending plaintiffs allegations and pursuing the third party demand against Travelers. Finally, the trial court dismissed RB ertueci’s claims against the bumbershoot underwriters. Travelers now appeals from this judgment.

DISCUSSION

Travelers assigns several errors on appeal:
1.) The trial court erred in accepting plaintiffs version of the accident when credibility of plaintiff and his witnesses was called into dispute;
2.) The trial court erred in failing to apply the watercraft endorsement to the facts of this case.
3.) The trial court erred in finding the settlement agreement to be reasonable.
4.) The trial court erred in denying Travelers’ motion to continue the trial.
5.) The trial court erred in rendering Travelers liable for Bertueei’s legal defense costs.

The Watercraft Endorsement

The Travelers policy which was issued to Bertucci contains a watercraft exclusion, Endorsement No. CG T8 00 08 93, which specifies that coverage is not provided for bodily injury “to any person aboard, boarding, or disembarking any watercraft.” Travelers contended at trial that plaintiffs accident occurred while he was boarding the Bertucci skiff, and therefore the watercraft exclusion precludes coverage under the Travelers policy. Bertucci contended that the accident occurred on the rock jetty, and the vessel was not in any way involved in plaintiffs fall. Bertucci argues that the watercraft exclusion is therefore not applicable.
Thus, the factual issue presented to the trial court was the location of the accident which gave rise to this litigation. The evidence presented with regard 16to the location of the accident was conflicting. At trial, plaintiff testified that although he did not actually remember the fall, he believed that he slipped on a rock at the top of the breakwater and fell down the levee into the water. This testimony was corroborated by the two witnesses to the accident, Ben Connor and Mike Thomas. Both of these witnesses prepared identical accident reports immediately following the accident stating that plaintiff fell as he was walking around the survey equipment at the top of the rock jetty. How *351 ever, during plaintiffs pre-trial deposition, plaintiff stated numerous times that the accident occurred while he was boarding the skiff after the surveying job was completed. On cross-examination by counsel for Travelers, plaintiff testified that he gave this account of the accident based on advice from his prior counsel to connect the fall to the watercraft. However, he stated that upon further reflection and upon hearing the accounts of the two witnesses to the accident, he changed his statement to specify that the accident occurred while he was at the top of the rock jetty.
In its oral reasons for judgment, the trial court stated:
Viewing the testimony in its entirety, the Court believes and accepts that the testimony and the evidence and the facts, particularly the medical records indicates, that it is more likely than not, that the Plaintiff was injured while traversing the surveying equipment and that he slipped down the slope of the rock jetty while proceeding towards that vessel and that his deposition testimony is explained more properly by virtue of who he was being represented by at the time and that it was in fact the truth resurrected after his initial complaints and after the reports of injury compiled by the first two witnesses.
In rendering this determination, the court recognized that the plaintiff had changed his version of the accident from his deposition testimony that he was stepping onto the vessel to his trial testimony that he fell from the top of the 17rock jetty. The court also recognized the fact that although Ben Connor and Mike Thomas both rendered written reports that Singleton had fallen from the top of the rock jetty, they denied corroborating on their reports although the reports were identical, including a misspelled word. However, the court noted that the notes of plaintiffs treating physician indicated that Singleton had fallen down the slope of the rock jetty on his way to the vessel. The trial court was obviously aware of the conflict in testimony among the witnesses, and the challenges to the witnesses’ credibility. The court nevertheless chose to resolve these conflicts by determining that plaintiffs version of the accident as presented at trial was correct.
Travelers contends on appeal that the trial court’s findings of fact in this case were manifestly erroneous. Travelers relies on the deposition testimony of plaintiff as affirmative evidence of the location of plaintiffs fall. Further, Travelers relies on an excerpt from plaintiffs emergency room records which state that plaintiff “fell from boat on rocks.” Finally, Travelers contends that Singleton, Connor and Thomas were not credible witnesses, and the trial court was manifestly wrong in crediting their trial testimony.
The standard in reviewing a fact-finder’s factual determination is the well-established manifest-error rule set forth in Stobart v. State through Dept. of Trans. & Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by this Court is not whether the trial court was right or wrong, but whether the court’s conclusion was a reasonable one. Even though this Court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review whether conflict exists in the testimony. Id.
IsAfter a thorough review and evaluation of the record, we are convinced that the evidence supports the facts found and reasons assigned by the trial judge. The record indicates that although the evidence was conflicting, the trial court fully recognized the inconsistencies in the testimony, but nevertheless concluded that “it has not been established that [plaintiff] was in fact stepping onto the bow of the vessel when he was injured.” In reaching this conclusion, the trial court weighed the testimony and the evidence and determined that “it was more likely than not that plaintiff fell on the rock jetty.”
The trial court evidently concluded that plaintiff’s testimony that he was coached by his previous counsel to state he fell from the boat was reasonable. Although this testimony was not corroborated by the testimony of plaintiffs previous counsel, we cannot say, on the basis of the record before us, that the trial court’s factual determinations were un *352 reasonable. The trial court had the opportunity to hear the testimony of the witnesses and view their demeanor, and we fail to find that his resolutions of the factual disputes were manifestly erroneous. That being the standard for appellate review, we will not disturb these factual findings of the trial court.
As the trial court made a reasonable factual finding that plaintiffs accident occurred on the top of the rock jetty, we find no error of the trial court in concluding that the watercraft exclusion in the Travelers policy is inapplicable. The endorsement relied on by Travelers excluded coverage to any person aboard, boarding or disembarking any watercraft. The trial court found that the accident occurred on land and the vessel was not involved in plaintiffs fall, and thus the endorsement was not applicable. The trial court was therefore correct in determining that the Travelers policy provided coverage to Bertucci for plaintiffs claims.
| ^Reasonableness of the Settlement
Travelers next contends that the trial court erred in approving the settlement of plaintiffs claims by Bertucci. Travelers argues that Bertucci failed to prove that it had potential liability for plaintiffs claims and that the settlement amount was reasonable.
The record contains evidence sufficient to prove that plaintiff fell on a rock jetty constructed by Bertucci. The evidence further showed that Bertucci chartered the M/V EMMETT EYMARD and its crew for assistance in constructing the rock jetty. Bertucci requested the help of the United Tugs’ employees in the survey operation at the top of the rock jetty. The record also indicated that Bertucci provided waders to plaintiff for use during the survey operation which plaintiff claimed were too large and caused his fall. Under these circumstances, we find evidence tending to prove that Bertucci was at fault in this accident and faced a substantial possibility of an adverse judgment if it proceeded to trial on plaintiffs claims.
We find no merit in Travelers argument that the settlement agreement between plaintiff and Bertucci was unreasonable. Bertucci was reasonable in believing that it may be cast in judgment if brought to trial, and there is no evidence that Bertucci improperly entered into this settlement agreement with plaintiff. Travelers had denied coverage to Bertucci, and Bertucci chose to settle plaintiffs claims prior to trial rather than proceeding to trial without established insurance coverage. We agree with the statements made by the trial court in its oral reasons for judgment:
The Court rejects the proposition that there is any unreasonableness in terms of the amount of the settlement arrived at in this matter. Neither will the Court allow Travelers the benefit of urging that there has been a settlement by parties who may otherwise lipnot be liable as a result of trial. Were Travelers to have participated in a defense of this matter; were Travelers to have participated in the negotiations concerning settlement of this matter; were Travelers to participate in the trial of liability and damages and were that to progress in this matter, their proposition may be tenable in terms of the parties against whom Judgment may be rendered and the facts that their nonparticipation in this matter, either in terms of providing a defense to Bertucci or otherwise contributing to the settlement of the matter, does not place them in a position to later complain that someone paid who otherwise may not have otherwise been obligated to do.
Although Travelers implies that plaintiff may have changed his testimony in order to gain the settlement of his case, we find no merit in this contention. The record shows that the settlement agreement obligated only Bertucci, and if the trial court found no insurance coverage, Bertucci would have been liable for its portion of the agreement. Further, the plaintiff stated at trial that he was unaware of how the insurance coverage issue affected the funding of his settlement.
As the trial court found that the Travelers policy provided coverage to Bertucci, Travelers is responsible for the funding of the settlement agreement which is reasonable and well within its policy limits.

The Motion to Continue

On the morning before trial Travelers moved for a continuance because it had just *353 learned that plaintiffs trial testimony would differ from the testimony given during his deposition. The trial court denied the motion, and the trial proceeded. Travelers now contends that the ruling of the trial court was error. Travelers contends that granting of continuance was mandatory based on provisions of La. C.C.P. art. 1602, which provides:
luA continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case.
Appellant contends that by the denial of the continuance, Travelers was precluded from taking the deposition of plaintiffs previous attorneys who allegedly coached plaintiff into stating in his deposition that he fell while hoarding the vessel. Travelers argues that the trial court relied on Singleton’s testimony of his former counsel’s coaching, and Travelers was therefore prejudiced by its failure to conduct further discovery.
We find the allegations against plaintiffs former attorneys to be serious and worthy of further investigation. We recognize that Travelers would want to depose these attorneys to discover the veracity of plaintiffs allegations. Nevertheless, we fail to find the provisions of article 1602 requiring a mandatory continuance to be applicable in this case. Travelers chose to deny coverage to Bertucci based on its watercraft exclusion, although there was conflicting evidence as to the exact location of plaintiffs fall. On this basis, Travelers did not participate fully in the pretrial discovery proceedings. Travelers cannot now complain that it was precluded from obtaining material evidence to its case, when Travelers could have fully participated in the gathering of such evidence had it not chosen to deny coverage. Further, it is unclear from the record when Travelers knew or should have known of plaintiffs change in statements, and Travelers has failed to prove that it was unable to conduct the desired discovery during the period before trial. We find no error of the trial court in denying Traveler’s motion for continuance.

Attorney’s Fees

The trial court granted attorney’s fees to Bertucci in the amount of Ii2$29,677.99 for its legal costs in defending plaintiffs claims and in pursuing the third party demand against Travelers. Travelers contends that the trial court erred in awarding attorney’s fees where the allegations in plaintiffs petition clearly indicated that the claims were excluded by the terms of the policy. We agree.
An insurer owes his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches this duty may be held liable for damages, including attorney’s fees. LSA-R.S. 22:1220.
The insurer’s duty to defend suits brought against its insured is determined by the allegations of the petition, not by the insurer’s interpretation of what liability may be covered by the policy. The insurer is obligated to furnish a defense unless the petition unambiguously excludes coverage. Micelotti v. Karno, 542 So.2d 734, 736, citing American Home Assurance v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969). See also, Orleans Parish School Board v. Scheyd, Inc., 673 So.2d 274 (La.App. 4th Cir.1996).
In plaintiffs petition, plaintiff stated that he “was caused to slip and fall after a rock slipped out from under him.” He also alleges that he was a Jones Act seaman in the employ of defendant, United Tugs, and that the United Tugs vessel was unseaworthy on the date of his accident as the crew was inadequate for the tasks performed. Paragraph XI of the petition states as follows:
On or about March 4, 1994, while the M/V “Emmett Eymard” was in navigation, petitioner, Charles W. Singleton, Jr., was caused to sustain serious and severe injuries, all by reason of the unseaworthiness of said vessel, its appliances, appurtenances and equipment
_ji3Plaintiff further alleged in this petition that Bertucci was liable for plaintiffs damages because the vessel which plaintiff alleged was unseaworthy was under contract to *354 Bertucci. Plaintiff did not name Travelers in this petition, but named the defendants’ marine insurer, Sphere Drake. Plaintiff subsequently amended his petition to state that Bertucci was also liable for supplying waders to plaintiff which were too large.
Moreover, plaintiff testified under oath in his deposition on numerous occasions that he slipped and fell while attempting to board the vessel after the survey operation was complete. Plaintiffs testimony during his deposition was explicit that he fell while stepping up on the bow of the skiff.
Thus, plaintiffs allegations prior to trial, including the allegations of the petition and the sworn statements made during his deposition, were that he fell while boarding a skiff. Although there was other evidence which indicated that plaintiff may have fallen on the crest of the rock jetty, the allegations made by plaintiff prior to trial was that he fell while boarding the vessel. Accidents occurring while boarding watercraft are expressly and unambiguously excluded by Travelers’ policy. Although plaintiff later modified his testimony which triggered the implication of indemnification by Travelers, this alteration of the allegations asserted during trial did not create a retroactive defense obligation on the part of Travelers.
Under the circumstances presented here, we find that Travelers did not breach their duty to defend Bertucci. Travelers’ refusal to provide Bertucci with a defense based on the facts as alleged by plaintiff prior to trial was reasonable and justifiable. Even under a liberal interpretation of plaintiffs petition, plaintiffs allegations do not assert grounds that bring his claim within Traveler’s duty to defend Bertucci. Thus, based on the facts of this case, we | ^conclude that the trial court erred in rendering Travelers liable for Ber-tucei’s attorney’s fees and legal costs.

CONCLUSION

Accordingly, the portion of the judgment that orders Travelers to pay Bertucci’s attorney’s fees and costs in the amount of $29,-677.99 is reversed. In all other respects, the judgment of the trial court is affirmed.

AFFIRMED IN PART; REVERSED IN PART.

. Sphere Drake issued a policy of marine insurance to both United Tugs and to Bertucci, and thus was brought into this suit as the insurer of both defendants.